IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

LEE SOBBA, Individually and Derivatively                                                            PLAINTIFF
In the Name of and on Behalf of SOBEL, INC.,
BELSO, INC., and ELSOB, INC.

v.                                          NO. 4:06VCV00941 JLH

SPENCER ELMEN; SODAKCO, LLC;
SUITE 107, LLC; SOBEL, INC.; BELSO,
INC.; and ELSOB, INC.                                                                              DEFENDANTS

## OPINION AND ORDER

Lee Sobba brought this shareholder derivative action on behalf of Sobel, Inc., Belso, Inc., and Elsob, Inc., against Spencer Elmen, Sodakco, LLC, and Suite 107, LLC. The complaint alleges that Elmen breached his fiduciary duties. The complaint also alleges that Sodakco and Suite 107 have infringed a trademark in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125, and have engaged in unfair competition in violation of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 et seq., and the common law. Sobba filed a motion for temporary restraining order and preliminary injunction in which he seeks preliminarily to restrain the defendants from using the Cupids tradename, trademark, and trade dress, and from making false representations that there is an association between stores operated by corporations the shareholders of which are Elmen and Sobba and stores operated by limited liability companies of which Sobba is not an owner. The motion further sought to enjoin alleged financial abuses, but Sobba has conceded that money damages are adequate as to those claims, so the Court will not address them in this opinion. By agreement, the Court temporarily restrained the defendants from opening a store in Jacksonville using the Cupids tradename, trademark, and trade dress. The Court conducted an evidentiary hearing on January 25, 2007. All parties were present in person and through their attorneys. For the reasons stated hereinafter, the motion for preliminary injunction is denied.

**I.**

Sobel, Belso, and Elsob are Arkansas corporations that operate three stores named Cupids. Sobel operates a store on 65th Street in Little Rock. Belso operates a store on Rodney Parham in Little Rock. Elsob operates a store in Hot Springs. According to the complaint, the stores sell "lingerie and adult-themed products." Sobba and Elmen are officers and directors of all three of the corporations. A.W. Bailey, an accountant, is also a director of all three corporations. Sobba owns 46% of Sobel; his wife owns 4% of Sobel; and Elmen owns 50% of Sobel. Sobba and Elmen each own 50% of Belso and Elsob.

Sobel opened the first Cupids store on 65th Street in Little Rock in October 2002. The store was originally called "Adult Arcade" but changed its name in December 2002 to Cupids Lingerie & More. Belso opened Cupids Lingerie on Rodney Parham Boulevard in Little Rock in 2004. Elsob opened Cupids Lingerie and More in Hot Springs, Arkansas, in May 2005.[1] Elmen manages the two stores in Little Rock. Sobba manages the store in Hot Springs.

All three stores use the tradename Cupids, as well as the trademark and trade dress. No one has registered the tradename, trademark or trade dress. However, Sobel is the senior user of the tradename, trademark, and trade dress used by all three companies. Belso and Elsob are licensees.

Sodakco and Suite 107 are limited liability companies controlled by Elmen. Suite 107 operates a store in Conway, Arkansas,[2] named Cupids Lingerie. Jackie, LLC,[3] an entity affiliated

---

[1] Hot Springs is approximately 53 miles from Little Rock.

[2] Conway is approximately 31 miles from Little Rock.

[3] Jackie, LLC, was not named as a defendant in this case, apparently because Sobba's lawyers did not discover its existence until recently. Both parties proceeded at the preliminary injunction hearing as though Jackie, LLC, were before the Court.

with Elmen, has constructed and plans to open a store in Jacksonville, Arkansas,[4] named Cupids Lingerie. Sobba has no ownership interest in Sodakco, Suite 107, or Jackie, LLC.

The two Cupids stores in Little Rock and the one in Hot Springs have commonly used the same tradename, trademark, and trade dress. They have advertised collectively.

Elmen has included the Conway store in the collective advertising since late January 2006, shortly before the store opened in February 2006. He has also included the to-be-opened Jacksonville store in collective advertising. Both the Conway store and the to-be-opened Jacksonville store use the same tradename, trademark, and trade dress as the two stores in Little Rock and the one in Hot Springs.

Elmen says that in the fall of 2005 he and Sobba agreed that the two of them separately could open new stores using the name Cupids Lingerie or Cupids Lingerie & More. He says that in January 2006 he and Sobba agreed upon a list of cities and areas into which each could expand with new stores. He says that he and Sobba agreed that Conway and Jacksonville would be his territory. He says pursuant to this agreement that he went forward through Suite 107 to open the store in Conway, and he went forward through Jackie, LLC, to open the store in Jacksonville. Sobba agrees that the possibility was discussed that the two of them might open Cupids stores separately, but he denies that any agreement was reached.

Neither Elmen's testimony nor Sobba's is entirely convincing. Elmen testified that the Cupids tradename, trademark, and trade dress and the associated goodwill are the most important assets of the three corporations. He testified that he and Sobba reached their agreement to operate separate stores using the Cupids tradename, trademark, and trade dress at a meeting of the board of

---

[4] Jacksonville is approximately 14 miles from Little Rock.

directors on January 11, 2006. However, no minutes exist of that meeting, nor is there any written agreement that would impose any control on how the separate stores might use the tradename, trade mark, and trade dress. The only documentation consists of two scribbled lists of cities with Elmen's or Sobba's initials next to some of the cities. One list was made by Elmen during the conversation on January 11, while the other list was made by Sobba. Elmen says that these two lists constitute the agreement as to which cities would be his territory and which cities would be Sobba's territory. Sobba testified that the two lists reflect a discussion of which cities might be Elmen's territory and which cities might be his, but that no agreement was reached. On the face of it, up to this point, the evidence would seem to be in favor of Sobba. The two handwritten lists look like lists that were scribbled down during a conversation; they lack the form and the substance that would be expected of an agreement of two owners of a valuable trademark to go their separate ways and separately use their commonly-owned trademark.

However, from sometime shortly after January 11, 2006, until the summer of 2006, both parties proceeded as though they had reached an agreement that would allow each of them to open Cupids stores separately. An advertisement published on January 26, 2006, includes advertisement for the two Cupids stores in Little Rock and the store in Hot Springs. It then adds:

NOW IN CONWAY!

2585 Donaghey Ave. Ste. 107

501-764-0404

Just look for the purple neon![5]

---

[5] Purple neon is part of the trade dress of the Cupids stores. "Just look for the purple neon!" is regularly used in advertising the Cupids stores.

Sobba saw the advertisement and therefore knew in late January of 2006 that Elmen was opening the store in Conway using the Cupids' tradename, trademark, and trade dress. However, no evidence suggested that Sobba objected or in any way tried to stop Elmen from opening the Conway store or from using the tradename, trademark, and trade dress.

Rather than objecting and trying to prevent Elmen from infringing on the trademark, Sobba took steps to open a Cupids store in Fayetteville, which was one of the cities designated as his territory on the scribbled lists that apparently were created on January 11, 2006. Sobba created RIBSO, LLC, to own and operate a store in Fayetteville. RIBSO's articles of organization were filed on March 7, 2006. On April 14, 2006, Sobba entered into a three-year lease, with payments of $2,700 per month, for a site at 2218 N. College Avenue in Fayetteville. He invested approximately $50,000 in renovating the facility, in addition to committing himself to the lease payments, which would come to $87,200 over three years. On April 25, 2006, Sobba obtained a certificate of zoning compliance for a sexually-oriented business named Cupid's Lingerie & Video at 2218 N. College Avenue, in Fayetteville.

Sobba testified that he took all of these steps to open the store in Fayetteville in anticipation of reaching an agreement with Elmen whereby they would divide the territory and open separate stores using the Cupids tradename, trademark, and trade dress. He testified that in May 2006 he concluded that no agreement would be reached, so he ceased going forward with the Fayetteville store and commenced his efforts to stop Elmen from using the tradename, trademark, and trade dress without an agreement to do so.

The difficulty is that Sobba's actions from January 2006 until May 2006, along with the actions of Elmen, are more compatible with the conclusion that the two of them had reached an agreement to open stores separately and had agreed on which cities each of them would take as his

5

territory than with the conclusion that they were negotiating toward an agreement. Sobba apparently allowed Elmen without objection to open the Conway store under the Cupids' trademark and to advertise the Conway store in common with the two stores in Little Rock and the one in Hot Springs. According to Elmen's uncontradicted testimony, he invited Sobba to the Conway store to view new systems in use there, and Sobba went but did not object to the store or its use of the tradename, trademark, and trade dress, all of which is inconsistent with the notion that either of them thought that Elmen had opened the Conway store in breach of his fiduciary duty and in violation of the trademark rights owned by Sobel. Sobba not only allowed Elmen to go forward in Conway without objection, but he also took steps to open a store in Fayetteville and invested or committed to invest more than $137,000 in the Fayetteville store. Furthermore, two witnesses, Dan Hoofman and James McKenzie, testified that Sobba told them in March or April of 2006 that he and Elmen had reached an agreement whereby the two of them could open Cupids stores separately.[6]

## II.

It is well settled in the Eighth Circuit that in deciding whether to issue a preliminary injunction the Court should consider four factors: first, the probability of success on the merits; second, the threat of irreparable harm to the moving party; third, the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and, fourth, whether the issuance of an injunction is in the public interest. *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998). With regard to a preliminary injunction, the burden on the moving party is

---

[6] Fred Henthorne's deposition testimony that Elmen told him sometime in the spring of 2006 that Sobba would not agree that the two of them could not operate stores separately is too imprecise as to the time of this conversation to outweigh the testimony of Hoofman and McKenzie, so the Court need not reach the issue of whether plaintiffs gave adequate notice, under the circumstances, of his deposition.

heavy, especially when granting the preliminary injunction would give the moving party substantially the relief that it would obtain after a trial on the merits. *Id.*

Although no single factor is dispositive, and each factor must be considered to determine whether the balance of equities favors granting the preliminary injunction, in this case the probability of success on the merits is the linchpin issue: if Sobba has met his burden of proof with respect to the probability of success on the merits, the other factors also tilt in his favor, but if he has failed to meet his burden of establishing the requisite probability of success on the merits, the other factors tilt toward Elmen.

For the reasons stated above, the evidence is insufficient to permit the Court to conclude that Sobba has met his burden with respect to the probability of success on the merits. For some months after January 11, 2006, both Elmen and Sobba proceeded as though they had an agreement whereby each could open Cupids stores in designated cities without the involvement of the other. Two witnesses testified that Sobba told them that such an agreement had been reached. Therefore, Sobba has not established the requisite probability of success. For the same reason, he has not shown the requisite threat of irreparable harm. Assuming that the owners of Sobel reached an agreement to open Cupids stores separately in designated cities, there is no "harm" in the legal sense from the fact that Elmen is exercising his rights under that agreement. Furthermore, if such an agreement has been reached, Elmen would be injured were the Court to enjoin his going forward pursuant to it. Finally, it would be hard for a court to say that it is in the public interest[7] to issue an injunction when the

---

[7] In this context, that one of the elements for the Court to consider is the public interest does not mean that the Court is empowered to pass judgment on whether it is good for Cupids stores to be opened in Conway or Jacksonville. Decisions regarding health, safety, welfare and morals pertain to the police power, which is vested in the state and local governments, subject to limitations imposed by the Supreme Court under the rubric of the First and Fourteenth Amendments. Those issues are not before the Court.

party seeking the injunction has failed to meet his burden with respect to the probability of success, the threat of irreparable harm, and the balance of harm.

## CONCLUSION

For all of these reasons, plaintiffs' motion for preliminary injunction is DENIED. Document #20. The temporary restraining order previously entered in this case is hereby dissolved.

IT IS SO ORDERED this 30th day of January, 2007.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE